UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) | Criminal No. 20-CR-10292-RGS |
| | ) | |
| KYLE EVANS, | ) ) | |
| Defendant | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Thirty-six year old Kyle Evans ("defendant") has been involved in the criminal justice system for more than seventeen years and has a serious and lengthy criminal record.   He also has a significant history of substance abuse.   In this case, on August 4, 2020, he was knowingly and illegally in possession of four round of ammunition recovered from his person after police conducted a lawful motor vehicle stop of the car he was the driver and sole occupant of.   *See* Presentence Report ("PSR") ¶¶ 11-22.   Pursuant to the Fed. R. Crim. P. 11(c)(1)(C) plea agreement filed in this case, the parties jointly recommend a sentence of 45 months.   The parties also seek a term of three years of supervised release aimed at preventing the defendant from returning to firearm-related crimes.   ECF No. 97.   The facts warrant a sentence which would communicate an unmistakably clear message both to the defendant and to other similarly situated defendants that society has laws which must be followed.   This proposed sentence is fair, reasonable and warranted, and comports with the sentencing objectives outlined in 18 U.S.C. § 3553(a).

I. **DISCUSSION**

A. **Legal Framework**

1

The advisory United States Sentencing Guidelines ("Guidelines" or "USSG") are "the starting point and the initial benchmark" in sentencing.    *Gall v. United States,* 552 U.S. 38, 49-50 (2007).   The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a).   *Id*. at 49-50.   Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1).   The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment.   *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.   *See* 18 U.S.C. § 3553(a)(6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing."   *See Gall*, 552 U.S. at 50.

### B.  Procedural History/U.S.S.G. Calculations

On October 6, 2020, a criminal complaint issued charging the defendant with Felon in Possession of Ammunition, in violation of 18 U.S.C § 922(g)(1).   ECF No. 2.   On November 19, 2020, a one-count indictment was returned charging the defendant with the same offense.[1] ECF No. 19 .   On November 9, 2022, the defendant pled guilty to that one-count indictment.

---

[1] The indictment also contains a forfeiture allegation in violation of 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

ECF No. 101 and *see* PSR ¶ 2.   The defendant faces a statutory maximum sentence of 10 years of imprisonment and a maximum term of 3 years of supervised release on this conviction.   *See* PSR cover page and ¶¶ 104, 107.

U.S. Probation issued the final PSR on February 8, 2023.   Per U.S.S.G. § 2K2.1(a)(6), the defendant's base offense level ("BOL") is 14 because he was a prohibited person at the time he committed the instant offense.   *See* PSR ¶ 27.   Pursuant to U.S.S.G. § 2K2.1(b)(1)(A), there is a 2 level increase to the BOL as there was at least three but not more than seven firearms involved.   *See* PSR ¶ 28.   The defendant's BOL is further increased by 4 levels as at least one firearm had an obliterated serial number.   This results in an adjusted offense level of 20.   ECF No. 97 and *see* PSR ¶¶ 29, 33.   A three point reduction for acceptance of responsibility results in a total offense level ("TOL") of 17.   *See* U.S.S.G. §§ 3E1.1(a) and (b) and PSR ¶¶ 35-37.   The defendant's criminal convictions establish a criminal history score of 26 which results in a criminal history category ("CHC") of VI.   *See* PSR ¶¶ 56-57.   With a TOL of 17 and a CHC VI, the corresponding advisory guideline sentencing range is 51-63 months.   *See* PSR ¶ 105.

## II.  APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS

Section 3553(a) of Title 18 requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.   These factors include, but are not limited to the following:   (1) the nature and circumstances of the offenses and the history and characteristics of the defendant, and, (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offenses, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.   *See* 18 U.S.C. §§

3553(a)(1) and (2).   The government asserts that an analysis of the factors enumerated in 18 U.S.C. § 3553(a) supports a sentence of 45 months which satisfies the interests of justice.

### A.  Nature and Circumstances of the Offense/Relevant Conduct

The government urges the Court to consider the nature and circumstances of the offense, to recognize the seriousness of defendant's crime and to assess the crime for what it is.   *See* 18 U.S.C. § 3553(a)(1).   The offense of conviction involves the illegal possession of four pieces of .22 caliber ammunition by an individual who had previously been convicted of at least one felony crime that was punishable by imprisonment for a term exceeding one year.   Those crimes included, but are not limited to convictions for the following:   Armed Robbery (knife), where the defendant received a 2 years to 2 years and 1 day committed sentence in May 2016; Resisting Arrest, resulting in a 2 year committed sentence in October 2015; and, Possession Class A (heroin), Resisting Arrest, and two counts of Assault and Battery on a Police Officer, where the defendant received a 2 year committed sentence in November 2013.   *See* PSR ¶¶ 45, 48, 51.

At approximately 10:15pm on August 4, 2020, Everett Police Department ("EPD") conducted a motor vehicle stop of a vehicle after observing the operator, later identified as the defendant, fail to stop at a red light causing the officer to brake hard to avoid a collision.   The officer observed the defendant to bend over almost disappearing from view while the defendant was seated inside the vehicle and also observed the defendant to be sweating, breathing heavily, and appeared extremely nervous.   After the officer approached the driver's side of the car, the defendant told the officer that he had just come from the hospital with his girlfriend.   However, the defendant was the sole occupant of the car.   While inside of the vehicle, the officer observed the defendant to be moving his hands around.   When asked for his license and registration, the

defendant stated that he did not have a license.   The officer asked if the defendant had any identification and he responded that he did not.   The defendant was asked to step out of the vehicle and he complied.   The defendant identified himself by name and provided his date of birth.   Police confirmed with dispatch that the defendant had a suspended license.   The car was neither registered to nor leased by the defendant.   The defendant advised the officers that the motor vehicle was a rental and that it was overdue.   He was placed under arrest.

An inventory search of the motor vehicle was begun at the scene and, in the trunk, police found $2,344 in cash, suspected narcotics, and an iPhone which was receiving repeated incoming calls. When the officer commented that it was a large amount of money, the defendant spontaneously uttered that the money had come from a strip club.   Also in the trunk, police located a Glock carry case for a Glock handgun with a serial number listed on the case.   There was no Glock handgun in the case but a trace of the serial number listed on the carry case revealed a serial number for a Glock that was reported stolen from California. Inside the Glock carry case, police discovered 2 loaded firearms, ammunition and more suspected narcotics, namely, a .22 caliber semi-automatic pistol with an obliterated serial number, and a 9 mm caliber semi-automatic pistol, as well as additional ammunition (.22 caliber and .40 caliber), and bags of suspected narcotics.   The officer advised the defendant to produce his Massachusetts License to Carry and he stated that he did not have one.

At the scene, an officer also conducted a search of the defendant.   Prior to doing so, for officer safety, the officer asked the defendant if he had anything that could stick the officer.   The defendant initially denied but then acknowledged having needles on his person.   The defendant stated he had a drug problem.   In the defendant's left pants pocket, the officer found four rounds

of .22LR caliber ammunition with a headstamp bearing the marking "F", as well as two needles and a lighter.[2]

As the traffic, weather and wind conditions created a safety issue for police, the inventory search of the car was suspended, a tow was called, and the vehicle was towed to the EPD garage where the inventory search resumed.   Officers located a 9 mm loaded semi-automatic pistol (located in an Adidas bag in the trunk), a .380 loaded semi-automatic pistol (located inside a camouflage bag which also contained men's clothing), a homemade loaded 9 mm semi-automatic pistol with no serial number (located under the driver's seat), and a round of .40 caliber ammunition (located between the back seat and trunk of the vehicle).   ATF later determined that four of the five firearms seized, namely, all but the homemade 9 mm semiautomatic pistol, as well as all the ammunition seized, were manufactured and/or purchased outside of the Commonwealth of Massachusetts. On a later date, the Massachusetts State Police Crime Lab analyzed the suspected narcotics seized in this case and confirmed they were narcotics, namely, 2.7 grams of fentanyl, 0.56 grams methamphetamine, and 0.12 grams heroin.

Further, at the defendant's August 10, 2020, phone arraignment in state court on this federal adoption case, among other statements, the defendant said the following: "I made a mistake."   *See* PSR ¶¶ 11-22.

**The Defendant's Criminal History and Characteristics**

The Court may properly consider the defendant's criminal history and characteristics which are important considerations under the factors outlined in 18 U.S.C. § 3553(a)(1).   The

---

[2] The indictment charges the defendant with the ammunition recovered from his person.

defendant is currently 36 years old, and has an adult criminal history dating back almost 17 years, to 2006.   *See* PSR ¶¶ 42-55.   A review of the defendant's criminal history reveals that he has several, serious felony convictions.    The longest continuous, committed sentence he has served was a 2 years to 2 years and one day for Armed Robbery.[3]   *See* PSR ¶ 51.

In 2006, at the age of 19, the defendant received a continuance without a finding ("CWOF") for Intimidation and Threats charges.   *See* PSR ¶ 42.   However, in January 2008, the CWOF was revoked, he was convicted of both crimes and received probation.    Thereafter, in December 2008, he was found in violation of probation and received a 6 month committed sentence.    *Id*.    In 2007, he was charged with Breaking and Entering Daytime with intent to commit a Felony, Larceny < $250, Larceny from a Building and Trespassing.    In January 2009, he was convicted and received a one year jail sentence with 8 months to be served and the balance suspended for 18 months for the first three convictions and 30 days committed (concurrent) on the Trespassing conviction.    *See* PSR ¶ 43.    On October 15, 2009, he was found in violation of his probation on the first three counts, and received a 4 month committed sentence on the last count.    *Id*.    In August 2009, he was convicted of furnishing a false name/social security number and received a fine.    *See* PSR ¶ 44.

In March 2011, at the age of 24, the defendant was charged with Possession Class A (heroin), Resisting Arrest, and two counts of Assault and Battery on Police Officer.    *See* PSR ¶ 45.    In November 2013, he was convicted on all counts and received a two year committed sentence (to run concurrently with the sentences outlined in the following two paragraphs).    *Id.*

---

[3]  In that case, on a later date, the defendant was later found in violation of his probation and sentenced to a further period of 18 months incarceration.   *See* PSR ¶ 51.

In April 2012, he was convicted of Shoplifting and received a fine.    *See* PSR ¶ 46.    On

December 7, 2011, he was charged with Larceny of a Person Over 65 and in May of 2012, was

convicted received a 2 year committed sentence that was suspended until May 2013.    *See* PSR ¶

47.    Thereafter, he was twice found in violation of his terms of probation and on October 23,

2013, he received a 2 year committed sentence (concurrent with sentence in ¶ 45). *See* PSR ¶ 47.

On July 14, 2012, the defendant was charged with Resisting Arrest and on October 23,

2013, he was convicted in that separate case and received a 2 year period of imprisonment

(concurrent with sentences in ¶¶ 45, 47).    *See* PSR ¶ 48.    In June 2013, he was charged with

Larceny from a Person.    He resolved that case as well on October 23, 2012, received another 2

year committed sentence for that conviction (concurrent with the sentences imposed on cases

outlined at PSR ¶¶ 45, 47, 48).    *See* PSR ¶ 49.    In August 2013, just two months after he was

charged with Larceny from a Person as outlined above, the defendant as charged with Disturbing

the Peace.    *See* PSR ¶ 50.    On October 23, 2012, the defendant was convicted in that case and

received a 2 year committed sentence (concurrent with the unrelated cases outlined above).    *Id.*

On July 30, 2015, the defendant was charged with Armed Robbery (count one), Assault

by Means of a Dangerous Weapon (count two), and Intimidation of a Witness (count three).

*See* PSR ¶ 51.    On May 4, 2016, he was convicted of all counts and received a 2 year to 2 year

and 1 day committed sentence (count one), 18 months imprisonment suspended until June 30,

2020 (count two), and a three year probationary term (count three).    However, in 2018 and

again in 2019, he was found in violation of his probation.    On April 10, 2019, as a result of his

violation of probation, he received an 18 months sentence.

Per the PSR, defendant remained discipline free for the time period from May 4, 2016 to

8

July 15, 2016, while he was at MCI-Cedar Junction. *See* PSR ¶ 51. However, while at MCI-Shirley, he received a disciplinary report for possession of a weapon and conduct which interferes with the security or orderly running of the institution. For those, he received a sanction of disciplinary detention and loss of visits. He was eventually reclassified and transferred to another state prison where he received four disciplinary reports: (1) refusing a direct order with a sanction of loss of visits; (2) conduct which interferes with the security or orderly running of the institution for which he received a sanction of loss of visits; (3) refusing to submit to urinalysis for which he received loss of gym; and, (4) and fighting with any person and conduct which interferes with the security or orderly running of the institution for which he received a sanction of disciplinary detention and loss of visits. *Id.*

Also, per the PSR, the conditions of the defendant's probation included substance abuse evaluation, substance abuse treatment, random drug screening, no drugs or alcohol, and a stay away from victims and witnesses. However, Middlesex Superior Court records note that the defendant was unable to maintain sobriety, failed drug screening, and could not complete inpatient treatment and his whereabouts were unknown for a span. *Id.*

In November 2015, the defendant was charged with Larceny > $250 and on May 11, 2016, was convicted and received a 90 day committed sentence (concurrent with any sentence he was currently serving). *See* PSR ¶ 52. In February 2018, he was charged with Attempt to Commit a Crime and on March 12, 2019, he was convicted of that offense and received a one year committed sentence (concurrent). *See* PSR ¶ 53. In November 2018, at the age of 32, the defendant was charged with Trespass (count one), Threats (count two), and Resisting Arrest (count three). *See* PSR ¶ 54. On March 8, 2019, he was convicted of those charges and

received a 12 month committed sentence (count one), a six month committed sentence (count two) and a 30 day committed sentence (count three).    *Id.*    Further, between November 2, 2018 and March 8, 2019, the defendant incurred four disciplinary reports for possession of suboxone, two for fighting, as well as a two-on-one assault.    *Id.*    On May 9, 2019, which was only two months after being convicted of the above offenses, the defendant was charged in a new case with Assault and Battery.    On May 9, 2019, he was convicted and received a 30 day committed sentence.    *See* PSR ¶ 55.    Thereafter, on August 4, 2020, he committed the instant offense. *See* PSR ¶ 11.

The defendant has been held at the Strafford County Correctional Facility since October 9, 2022.    Since that date, he has incurred disciplinary referrals for the following: offensive language, disobeying order or correctional officer, threatening another person or property, and misusing authorized medication.    Sanctions include the defendant being placed in lockup.    *See* PSR ¶ 7.

Turning to other characteristics of the defendant, the defendant's upbringing, his stable then unstable family life, his mental and emotional health, his educational background, and his substance abuse, are all outlined in the PSR.    *See* PSR ¶¶ 71-100.    At age 14, he left high school in 9th grade due to living circumstances.    *See* PSR ¶ 95.    While incarcerated, he has obtained his GED.    *Id.*    In his presentence interview with U.S. Probation, among other things, the defendant related that he first consumed alcohol at age 13 but that has never been a problem for him.    *See* PSR ¶ 90.    At age 14, he first starting using marijuana and, during his teenage years, continued to use it on a daily basis.    He reported that he has not used marijuana since age 28.    At age 19, he first used cocaine and reported using it twice per month in social settings.

That same year, he used crack cocaine on approximately 6 occasions and began abusing Adderall. *Id.* Per the defendant, he has not used cocaine or Adderall since age 31. At age 22, he was using prescription medications and stopped at age 24 when he began using heroin. Also at age 24, he began to use ecstasy and did so socially but not often. *Id.* Per the defendant, he used heroin and ecstasy until age 33 and was using 8-10 grams per day. At age 33, he used methamphetamine for approximately one week. *Id.* The defendant has overdosed on heroin on multiple occasions most recently at ages 32 and 33. *See* PSR ¶ 91. Following his arrest in August, 2020 in the instant case, he was admitted to the hospital for one week for withdrawal. Additionally, Stafford County Correctional Facility records verify that the defendant is in the Medicated Assisted Treatment ("MAT") program receiving suboxone. *Id.*

Per the PSR, it is clear that the defendant suffers from significant substance abuse issues and has overdosed on multiple occasions. *See* PSR ¶ 91. Following his arrest in 2020 on this case, he was also admitted to the hospital due to withdrawal. *Id.* The defendant reported a history of substance abuse and treatment to include 20 detoxes in the past approximately 14 years. *See* PSR ¶ 92. Prior to his imprisonment on the instant case, the defendant had never been prescribed suboxone but noted that he had tried it while on the streets. *See* PSR ¶ 91. More recently, in April 5, 2021, over the government's objection, the defendant was released on pretrial supervision in this case to the Hope House Program and on April 10, 2021, he absconded after refusing urinalysis. He remained a fugitive until May 8, 2021, when he was re-arrested on this case. *See* PSR ¶ 92. The defendant has reported to U.S. Probation a desire to maintain sobriety which includes medicated assisted treatment and further substance abuse treatment. *See* PSR ¶ 93. Per U.S. Probation, it appears the defendant is an appropriate candidate for the

Bureau of Prison's 500-hour Residential Drug Abuse Program ("RDAP") based on the defendant's reported history of substance abuse prior to his arrest and the defendant has expressed an interest in participating in the program. *See* PSR ¶ 94. Due to his substance abuse issues and his various terms of imprisonment, the defendant has had sporadic employment over the past approximately 13 years. *See* PSR ¶¶ 97-100. As a condition of his supervised release, the defendant should be required to continue to engage in substance abuse treatment as well as seek and maintain regular employment throughout the pendency of his supervised release term.

**B. The Need for Specific and General Deterrence and Protection of Public from Further Crimes of Defendant**

The Court must also consider deterring both the defendant and others. *See* 18 U.S.C. §§ 3553(a)(2)(B), (C) (the court may impose a sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"). The government asserts the requested sentence would comport with the goals of specific deterrence. Despite multiple arrests and convictions for serious offenses spanning more than 17 years, despite serving 2 years to 2 years and 1 day committed sentence for Armed Robbery (and thereafter, an additional 18 month sentence in that case after being found in violation of his terms of probation), the defendant has failed to learn that the criminal justice system will punish those who repeatedly ignore the law and commit new crimes. Instead, he committed the instant crime of felon in possession of ammunition following a string of other arrests and convictions. He did not get the message of compliance with society's laws from his multiple, prior incarcerative sentences, so this sentence needs to make that point clear. The defendant must be held accountable. The government seeks the Court to sentence the defendant in a manner that both

communicates to him the seriousness of his criminal behavior and makes it clear that continued criminal conduct will not be permitted.

An equally important consideration here is general deterrence. *See* 18 U.S.C. § 3553 (a)(2)(B) (sentencing goals include the need to afford adequate deterrence to criminal conduct). The defendant's crime has had a negative impact on the community at large. A sentence of 45 months for knowingly and illegally possessing four rounds of ammunition would communicate to the defendant and to others that there are significant consequences for committing this crime. Messages that take into account the seriousness of illegally possessing ammunition as well as the need to protect public safety by imposing significant sentences can help make communities safer and deter others from committing the same crimes. The government seeks that a message be sent to others, like the defendant, who have been in and out of the criminal justice system and continue to commit serious crimes. The message should be clear. Illegally possessing firearms or ammunition will not be accepted. A close to four year sentence would send the appropriate message and would tell similarly situated individuals that if they too continue their criminal conduct and are also convicted in federal court, that they too will face staff prison sentences.

### III.   CONCLUSION

For the foregoing reasons, the government recommends that the Court adopt the joint recommendation and sentence the defendant to a term of imprisonment of 45 months, followed by three years of supervised release, as well as forfeiture, and a $100 mandatory special assessment.

<div style="margin-left:40%">

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:       */s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

</div>

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<div style="margin-left:40%">

*/s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

</div>

Date: February 10, 2023